Good morning. May it please the Court, Christopher Lye for Appellants Andrew Grego and Maria Dorshock, and I'd like to reserve four minutes for rebuttal. This case arises from the District Court's conclusion that the record demonstrated no issues material fact regarding the injury or causation elements of appellants Washington Consumer Protection Act and negligence claims based on the chapter 60.44 RCW medical services liens recorded against their personal injuries elements, but neither the record nor applicable Washington law supports these conclusions. First, regarding the injury element, the only standard that's been applied by the parties and the District Court has been the CPA standard for injury, which recognizes that both quantifiable monetary damages and unquantifiable damages are sufficient to support a claim. Is there any evidence in the record of unquantifiable damages in this case? Yes, Your Honor. For one, there's the adverse consequences of having a medical lien recorded against you without an accompanying recorded lien release. Is there any evidence in the record that either of the plaintiffs in this case had that happen to them? There's no evidence that they've experienced these negative effects, but we've cited in our reply brief, I believe it was the reply, the Marotti case from the Washington Court of Appeals, which holds that even the potential harm is sufficient to support a CPA claim. It's actually very similar of what happened in the Marotti case. It involved a judgment that was entered pursuant to a covenant not to execute, and the argument on appeal was that there was no harm that was sufficient to support a claim because the underlying defendants were insulated from the effects of the judgment. But in this case, Cadillac and Carden had a right to some amount of lien, right? I mean, so the only injury would have been that there was an incorrect amount, not because of the fact of the lien. Well, under these facts, Your Honor, we would disagree. For one, and I believe Your Honor may be addressing the W's, which involved a deed of trust, and the court in that case held that the claimed error was a failure to provide sufficient proof that the beneficiary initiating the foreclosure was the proper beneficiary. The court said that there was no causation in that case, flowing from the statutory violation. Unlike this case, we're not dealing with some technical deficiency. We're dealing with an instrument that we allege is invalid from the start. Why is it invalid from the start? Well, it wasn't signed by the claimant. It was signed by their agent. Well, there's nothing in Chapter 60.44 RCW that authorizes the claimant to be Why does there have to be something specific in the statute? Isn't that basic law? It's also a principle of Washington statutory construction that when the legislature expressly grants a type of authority in one statute but doesn't do so in another statute, it didn't intend to grant that authority. You're talking about the mechanics lien case? Correct, Your Honor. Is that Williams? Is that the case? Correct, Your Honor. And in the mechanics lien statutes, those statutes do expressly grant the authority for a third-party agent to sign a lien. The statute expressly states the claimant or another person authorized to act on his or her behalf can sign. That language is not present in the medical lien statutes. So it's a matter of either applying the canon of strict construction Don't we interpret these liens, though, somewhat favorably to the claimant here? We don't, Your Honor, because there's no express canon of liberal construction or express mandate. Well, it seems like the legislature was trying to assist them in trying to collect the debts that are owed to them for medical services rendered in a traumatic situation. Correct? There was... Nobody disputes that the debt, there's a debt owed to the hospital for the services provided. Isn't that correct? And that's correct, Your Honor, but it's a more nuanced point. No, I mean, do you dispute that the clients here received proper medical care from the hospital and incurred a debt? They did receive medical care. And the legislature has said the hospitals and other medical providers who provide care in this kind of situation can record a lien against any recovery from third-party tort fees and their insurers. That's correct, Your Honor. And that's what they did here. They filed a lien against the recovery. It was a lien that failed to comply with the statutory requirements for having a valid lien. Well, let's just assume that an agent can file a lien, then it would be proper, correct? Correct, Your Honor. All right. So, let's assume that the lien was proper. Where does that get... How does that affect your argument? We believe it has no effect, if nothing else, because the amounts that were being demanded as payment also exceeded the statutory cap. Now, did the hospital and... Is it Carden? Cadillac was the hospital, right? Correct. And Carden was the agent? Correct. Did they know at the time they recorded the liens, did they know the amount of the settlements? They did not know that. Were they ever informed of the amount of the settlements? They were informed in Mrs. Dorschuk's case. There was a letter that was sent by her personal injury attorney to Carden that specifically stated, you are exceeding the statutory cap on lien recoveries. Here's the correct amount. Please reduce the amount of the lien. And the response from employees was that Cadillac had denied that request. And that was followed with another demand letter for the excessive amount. The excessive amount was a little over $8,000. The proper amount was about $6,225, I believe. That was followed by a subsequent... So, the only way... In your view, the only way they could act properly under the medical lien statute is to demand payment of the exact amount of the lien that would be recoverable from the settlement. Correct, Your Honor. So, in other words, I guess in the other situation of... What was the other fellow's name? Andrew Grego, Your Honor. Grego. They didn't know. They didn't know the amount. So, what are they supposed to do? Well, some of the arguments that were advanced before the district court and it's in the record, it's primarily in Cardon's motion for judgment on the pleadings, is that this has been framed by employees that medical services liens really only concern the provider and the tort fees are in their insurer. In their view, the patient and their personal injury attorney is essentially a bystander that has no standing or no... But the lien is on the recovery, on the amount. Correct, Your Honor. The amount of the settlement. Correct. So, what is a lawyer supposed to do in that situation? In that situation... He gets... Like in this case, he got... What was it? Two hundred... From one of the insurance companies, he got $250,000? Correct. And he knew there was a lien out there. So, what is he supposed to do? In this case, the personal injury... Generally speaking, under the ethics of the Washington State Bar. RPC 1.15 AG requires the attorney when there's a good faith dispute over disposition of a portion of the fines to withhold those fines until the dispute is resolved. And that's what... Breckel, is that his name? That's what he did here. Correct. Breckel, that's what he did here. Correct, Your Honor. And you claim that that was improper? We claim that it was improper because it was induced by an invalid instrument, first of all. How come you didn't sue him if it was improper? Because the ultimate cause of the withholding was the improper withholding... Or was the improper lien, both the fact that the lien was invalid in and of itself, and the fact that the amounts withheld were excessive. There was another $50,000 for Breckel, correct? Correct, Your Honor. And that came from underinsured motorist protection? Correct. And was that under the lien statute? Was that subject to the lien, to a medical lien? No, and that was admitted in the record by one of Cardon's representatives who believed they're a 30B6 witness. That the total amount that was demanded as payment for Mr. Grego's lien necessarily encompassed... So following up on Judge Bichon's question, as I understand the injury, your strongest argument is that your clients were deprived of the use of the excess amount over the lien limitation, the limit on the lien, right? Our position is that's not our strongest argument for injury. It was certainly one of the injuries that was incurred. The other injuries that were incurred were the loss of use of the total amount of the fines, which we contend was caused by... Why would the hospital... I mean, if there was a proper lien that was filed, then the lawyer did what he was supposed to do. How could that be... Well, our contention is the lien wasn't proper, Your Honor. Okay, if you assume that the lien is proper. If we assume the lien was proper, then there would be no unfair or deceptive act in this case. That's only assuming that the lien was proper. If the lien was proper, that is, if the agent could properly file the lien, it's your position that there's no deceptive practice afoot here? Other than demanding the excess amounts, because that's clearly precluded by RCW 60.44.010 and its statutory cap, as well as the fact that these liens don't apply at all to UIM proceeds. Is there anything in the record that explains the thinking that the lawyer followed in deciding what to hold back? There's nothing expressed, but we're entitled to reasonable inferences on summary judgment, and we can infer from the amounts that were withheld that there was a causal connection between the liens and the demand letters and those amounts being withheld. The amount withheld for Mr. Grego was exactly 25% of his combined total settlement amounts. The amount withheld for Mrs. Dorschuk was the exact amount that was demanded as payment by athletes. So, we can infer the causal connection solely through the amounts that were withheld. So, in the Grego matter, though, it looks like what he withheld also included the 50,000 underinsured motor settlement amount as well. Correct, Your Honor. But that was the attorney's mistake. It wasn't due to anything that either Cadillac or Cardon did, right? Oh, there was the demand letter that was sent by Cadillac and Cardon saying that they wanted to recover a little over $79,000, which necessarily would encompass part of the tortfeasor settlement as well as the UIM settlement. But for that demand, which was not... There's no evidence they knew what the settlement amount was, right? Well, there's also evidence in the record, Your Honor, that one of the reasons that Cadillac hired Cardon was to continually communicate with the tortfeasor and their insurers. They are attempting to shift the blame for their deficient collection practices, including communicating with the tortfeasor and their insurer to the personal injury attorney in this case. Counsel, I think you should answer any judge's question fully, and I'll give you extra time if you need to. But I noticed that your time left is only a minute and a half. Thank you, Your Honor. Because we wanted about six minutes for rebuttal. Thank you, Your Honor. Well, we'll add an extra minute on that. Good morning, Your Honor. My name is Ralph Palumbo. I represent Cardon Healthcare. I'm going to share this argument with Brad Fisher, who represents Cadillac, the hospital. I'm going to discuss Cardon's authority to sign the liens as Cadillac's authorized agent, the undisputed fact that appellants did not pay any money or incur any expense in response to Cardon's alleged excessive demands, and Cadillac's right to seek payment from the tortfeasor rather than bill Medicaid. And Mr. Fisher is going to cover appellant's loss of use caused by their own personal attorney, lawyer, that appellants have no ongoing liability to the hospital and that appellants have failed to state any CPA claim. First, let me talk about the Cadillac's authority. RCW 60.44 entitles Cadillac to file medical liens against tortfeasors who injured the appellants and the tortfeasors' insurance companies. Appellants contend that otherwise valid liens are invalid by the fact that Cadillac, a corporation that can act only through its agents, did not literally sign the notice of lien. Appellants rely on a rule of strict compliance stated in the Williams v. Athletic Field case, but in Williams, the Washington Supreme Court held that the lien statute should be liberally applied to a claimant such as Cadillac who is intended to be protected by the statute and provided lienable services. Appellants' reply brief exposes the fallacy of their own argument because appellants say that RCW 60.44.010 provides, quote, the exclusive list of individuals and entities authorized to claim a medical services lien, including every operator of a hospital. And then in the next breath, appellants say, thus under RCW 60.44.010, medical services must be subscribed by the claimant or its employees. Well, a Cadillac employee is not the operator of the hospital. A Cadillac employee can only pursue a lien if they are authorized by the hospital to do so. Thus, neither the language of 60.44.010 nor any reasonable interpretation of the statute supports the appellant's position that a lien notice signed by an authorized Cadillac employee is valid but a lien notice signed by Cadillac's authorized agent is not valid. Let me move on to the excess payments. Essentially, counsel has argued that Carden made demands to pay more than 25 percent of their personal injury settlement. Isn't that correct? It is not correct, Your Honor. For Carden filed two liens. The initial lien was for the full amount of the Cadillac bill because Carden had no idea whether there ever would be a settlement. Can you focus on Dorshuk for purposes of your argument? Sure. Because the other one, we know that Carden and Cadillac didn't know the amount of the settlement. Right. And I understand that. But for Dorshuk, they seemed, the correspondence between the lawyer and your client shows that they knew that the settlement was for 25,000. Right. And it is correct, Your Honor, that Carden erroneously sent a letter citing the full amount of the Cadillac bill and Ms. Dorshuk's case was $8,550 instead of 25 percent of her recovery, which was $6,250. The brekkie firm responded to that letter with a letter stating that $8,550 exceeds the 25 percent cap in 6044 and requesting that Cadillac accept $6,250. That's ER 247. So clearly, the brekkie firm knew what the limitation was and they simply could have paid that amount and it would have extinguished the lien. But let me ask you this. Couldn't the hospital still demand their payment of the full? It looked like they weren't willing to compromise the amount of the bill. There's... And they're demanding full payment out of the settlement funds. That's right, but... They have the right to do that, correct? Yeah, they do. But there's no... But if you're going to base your recovery on the amount of this lien, then you're stuck, at least for that purpose of the lien, you're only... You're stuck with the 62... With the 62... Right, and what we point out is that the evidence in the record in both cases show that the brekkie firm was well aware of the 25 percent limitation in the cap. The liens would have been extinguished had brekkie done nothing. They also knew that the hospital wasn't willing to compromise for that amount on the total amount of the debt, which the client is still... Isn't it correct, as I said at the outset, that the debt, the true debt is the amount of the bill that the hospital charged her for, correct? Right, and... But the... Brekkie created the problem. He could have simply discharged the lien or paid the 62.50 and that would have discharged the lien. It required no permission. He required no permission from the hospital to do that and indeed, had he done nothing in the first place, the insurance company for Ms. Dorachuk would have paid the 62.50 and that would have discharged the lien. But even with all of that, Ms. Dorachuk never paid one dime on her bills and so even if you conclude that Carden made an excessive demand, there still is no injury because Ms. Dorachuk never paid her Cadillac medical bills, not one penny of it and never incurred any expense in connection with that. Didn't she lose the use of the overage, the whatever it is, $2,300 while the incorrect amount of the lien was being held up? There's no... There's no evidence in the record to tell us whether in Mr. Grego's case, we know that the Brekkie firm calculated an amount and put it in trust for a period of time. Mr. Fisher is going to address that. In Ms. Dorachuk's case, there's no evidence whatsoever about whether or not the Brekkie firm withheld any of Ms. Dorachuk's funds and Ms. Dorachuk testified she didn't even know about the lien until the day of her deposition. So there's no evidence in this record, Your Honor, from which you could draw an inference that Ms. Dorachuk was harmed by a single erroneous letter which referenced the full amount of the lien. And moreover, as Mr. Fisher will explain, the hospital has walked away from this. They're not asking that any money be paid and the time to sue the tortfeasor has expired. So we couldn't now sue the tortfeasor and force Mr. Grego or Mr. Dorachuk to make good on the hold harmless and indemnification agreement they signed on behalf of the tortfeasor. I'll address... I'll address the UIM quickly. Uninsured motorists. There's one letter which shows or one note from Cardin which shows that Cardin collected information on uninsured motorists' policies. There's no evidence in the record that Cardin or Cadillac ever demanded any portion of that. And in fact, the record proves that Cardin never even knew the amount of Ms. Dorachuk's UIM insurance. And again, because Ms. Dorachuk hasn't paid anything or incurred any expense, there's no damage. And I want to take this opportunity to turn this over to Mr. Fisher unless your honors have additional questions for me. Thank you. Thank you. Good morning. May it please the Court. Brad Fisher on behalf of Cadillac Regional Medical Center. As Mr. Palumbo alluded, I'll be trying to speak to the causation and damage pieces of this case. And those are obviously issues which Judge Peterson felt were dispositive here such that she didn't even need to reach some of these arguments about liability. If we take a small step back here and things work the way that even these folks  intended to work by Congress and the Washington Legislature, Cadillac should have been paid a little under $70,000 on the liens against the proceeds that were received by these two plaintiffs. Instead, Cadillac has received nothing. It's not going to receive anything at this point. It's too late to make a claim against the government payors. The liens have expired. They have no recourse here. But putting aside the inequity of that, there's three reasons why there's no claim here based on causation and damages. Even if there was a form, excuse me, a defect in the form of the lien notices that were filed, and to be very clear, as Mr. Plumbo alluded, it is our adamant position there is not that an authorized agent may execute a document on behalf of its principal. But even if there was, which other than the story shock snafu plaintiff's counsel is saying is the basis for this entire case, even if there was a defect in the form, it is not a defect in the form of the lien that caused the damages the plaintiffs are seeking here. It's the fact that there is a right to a medical lien. That's what they're objecting to here. There's no causation. In other words, I understand what you're saying is that the hospital had the right to file a lien or record a lien for the amount of the debt and they did that. Exactly, Your Honor. And we might have a different case. No, whatever the settlement might ultimately be. Yeah, because as you've alluded to in your question today, they'd be saying, well, you misstated the amount. Spot on to the dollar, we hit the amount of the liens. They didn't talk about the Blair case in their reply brief, even though that's a prominent part of our opposition on this appeal. And what the Blair case said, that's a Washington Court of Appeals case from 2016 where the court found there was a violation of the deed of trust act by the trustee. The trustee did not conform to the law. But what the court held is there was no causation of damages because even if the trustee had done it right, the plaintiff would have incurred the same expenses. That's this case. If someone else, I don't know, a W-2 employee versus an authorized agent, had executed the lien notice, which they say is fine, we would be exactly where we are today. So there was no causation. Second of all, the decision to hold the lien notice, which the court held was fine, the plaintiff would have incurred  expenses because even if the trustee had done it right, the plaintiff would have incurred the same expenses because even if the trustee had done it right, others     expenses so in fact, if he is inflamed and there are conflicting claims on that money, then the lawyer has to act responsibly so I may only would say that he  that he has to act responsibly so I may only would say that he has to act responsibly so I may only would say that he has to act responsibly so I may only would    has to act responsibly that he has to  responsibly so I may so I may only  say that he responsibly so I may  would
judges: Gould, Paez, Bashant